# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA A. TWARDOWSKI | § § | |
| Plaintiff, | § § | Civil Action No. 1:20-cv-04285-MFW |
| v. | § § | **STATEMENT OF MATERIAL FACTS** |
| CREDIT MANAGEMENT, LP | § § | |
| Defendant. | § | |

## DEFENDANT CREDIT MANAGEMENT, LP'S STATEMENT OF MATERIAL FACTS

COMES NOW the Defendant/Movant, and pursuant to LR 56.1(d), CMLP states that the following material facts are not in dispute:

*Plaintiff's Bankruptcy*

1. On February 18, 2020, Plaintiff and her husband, Ryan Twardowski, filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. Exhibit 3.

2. In her bankruptcy schedule, Plaintiff included a debt owed to "AllianceRx Walgreens Prime," for the amount of $165.00. Exhibit 3 at 22.

3. The above-referenced Bankruptcy Petition was granted, with an order of discharge entered June 18, 2020, in Cause. No. 20-04391. Exhibit 4.

*CMLP's Policies and Procedures*

4. CMLP is a company that engages in collecting third-party debts for its clients. Exhibit 2 at 9:18-21.

5. At any given time, CMLP services hundreds of thousands of debts for approximately fifty clients. Exhibit 2 at 16:1-17:6.

1

6. It is CMLP's policy not to engage in collection activity on accounts it knows to be subject to bankruptcy. Exhibit 2 at 27:18-22; 67:20-68:6; Exhibit 8; Exhibit 12 at ¶ 6.

7. It is CMLP's policy not to accept placement of accounts from creditors when it is known by the creditor that the account is subject to bankruptcy. Exhibit 12 at ¶ 4.

8. Creditors for whom CMLP collects debts have an affirmative duty to inform CMLP if an account is subject to bankruptcy, and that information is either automatically received from creditors or comes in through clients' contact with a Client Services representative. Exhibit 2 at 69:17-70:7; 71:6-19; Exhibit 12 at ¶ 5.

9. Every time CMLP receives a new account, it sends the account information to a third-party vendor, LCI, to identify whether the account is subject to bankruptcy (a process known as a "scrub.") Exhibit 8 at ¶ 5.1.1; Exhibit 7; Exhibit 12 at ¶ 7.

10. It is CMLP's policy to subject every new account to a bankruptcy scrub. Exhibit 8 at ¶ 5.1.1; Exhibit 7 at ¶ 4; Exhibit 12 at ¶ 7.

11. If LCI identifies that an account or debtor is subject to bankruptcy, it returns that information to CMLP. Exhibit 8 at ¶ 5.1.1; Exhibit 12 at ¶ 8.

12. If LCI does not initially detect that a new account is subject to bankruptcy, it continues to monitor that account to identify if the account ever becomes subject to bankruptcy at a later date. Exhibit 8 at ¶ 5.1.2; Exhibit 2 at 34:21-35:11; 70:13-21; Exhibit 12 at ¶ 9-10.

13. If LCI later identifies an account has become subject to bankruptcy, it returns an updated report to CMLP. Exhibit 2 at 61:5-9; Exhibit 12 at ¶ 10.

14. Based on CMLP's experience working with LCI, CMLP considers LCI a reliable vendor. Exhibit 2 at 40:13-41:10.

15. LCI has not provided unreliable information to CMLP in the past. Exhibit 2 at 41:2-5.

16. When CMLP is notified that any account is subject to bankruptcy, its policy is to immediately mark that the account is subject to bankruptcy, which is done automatically if the information is received through an automated process or manually if the information is received by a Client Services representative, and to automatically withdraw the account or place it on a permanent hold. Exhibit 2 at 71:6-19; Exhibit 8 at ¶ 5.2.2; Exhibit 12 at ¶ 11-12.

17. When CMLP receives notice from a client, debtor, or other entity that an account is subject to bankruptcy, its procedure is to similarly mark that the account is subject to bankruptcy. Exhibit 2 at 69:3-16; 69:17-70:7; 71:6-19; Exhibit 12 at ¶¶ 11-12.

18. When CMLP receives a dispute from a consumer noting a bankruptcy, employees in the Account Resolution Department timely process those disputes and mark that the account is subject to bankruptcy. Exhibit 9; Exhibit 12 at ¶¶ 11-12.

19. When CMLP marks that an account is subject to bankruptcy, whether it receives bankruptcy through a scrub, from the client, from a third-party, a consumer, or a consumer's attorney, its policy is to take no further collection action on that account. Exhibit 2 at 71:20-72:10; Exhibit 12 at ¶ 12.

20. CMLP's policy of ceasing collection on any accounts subject to bankruptcy applies equally to circumstances when CMLP is notified of the bankruptcy through a bankruptcy scrub, it receives the bankruptcy information from a client or other third-party, or receives a dispute from a consumer noting the account is subject to bankruptcy. Exhibit 2 at 71:20-72:3; Exhibit 9; Exhibit 10; Exhibit 12 at ¶¶ 11-12.

21.     The policies described here are memorialized and available to all employees, and are included in regular training, including a quarterly refresher course for any employee handling consumer accounts.  Exhibit 2 at 28:3-29:10; Exhibit 7; Exhibit 8; Exhibit 9; Exhibit 10; Exhibit 12 at ¶ 13.

22.     CMLP does not commence collection activity on an account unless and until it receives a negative response from its bankruptcy scrub.  Exhibit 2 at 23:5-9.

*The Subject Account*

23.     On June 29, 2020, CMLP received an account from its client AllianceRx Walgreens Prime ("Walgreens") that reflected a $165.00 debt owed by Plaintiff Jessica Twardowski ("the Account").  Exhibit 6; Exhibit 12 at ¶ 15.

24.     When it received the Account from Walgreens, CMLP was not notified by Walgreens that the Account was subject to bankruptcy.  Exhibit 2 at 39:6-13; Exhibit 12 at ¶ 16.

25.     At no time after it received the Account did CMLP receive notification from Walgreens that the Account was subject to bankruptcy.  Exhibit 12 at ¶ 16.

26.     At no time before or after it received the Account did CMLP receive notice from the Bankruptcy Court that the Account was subject to bankruptcy.  Exhibit 12 at ¶ 17.

27.     CMLP followed all its regular policies and procedures as it processed the Account.  Exhibit 2 at 40:1-12; Exhibit 12 at ¶ 14.

28.     On the day the Account was received, CMLP sent the Account information to LCI and requested a bankruptcy scrub.  Exhibit 6; Exhibit 12 at ¶ 18.

29.     LCI did not return any information noting the Account was subject to bankruptcy. Exhibit 2 at 38:4-12; Exhibit 12 at ¶ 19.

30. At no time after CMLP initially sent the Account to LCI for a bankruptcy scrub did LCI notify CMLP that the Account was subject to bankruptcy. Exhibit 2 at 38:13-39:5; Exhibit 12 at ¶ 19.

31. On July 1, 2020, CMLP sent Plaintiff a letter notifying her that it held the Account and informing her of her rights to validate and dispute the subject debt. Exhibit 5 ("the Letter"); Exhibit 2 at 42:22-43:12; Exhibit 12 at ¶¶ 20-21.

32. CMLP sent the Letter after LCI returned a negative bankruptcy scrub indicating it had not identified a bankruptcy that applied to the account. Exhibit 2 at 32:7-17; Exhibit 12 at ¶¶ 18-21.

33. On July 21, 2020, Plaintiff filed suit in this Court seeking damages under the FDCPA and claiming CMLP attempted to collect on an account that was subject to bankruptcy. Exhibit 11; Exhibit 12 at ¶ 22.

34. At no time prior to the filing of this lawsuit did Plaintiff attempt to dispute the debt or otherwise inform CMLP of the bankruptcy. Exhibit 6; Exhibit 1 at 35:25-36:10; Exhibit 12 at ¶ 23.

35. At the time it sent the Letter, CMLP was not aware that the Account was subject to bankruptcy. Exhibit 2 at 37:17-21; Exhibit 5; Exhibit 12 at ¶ 21.

36. Upon learning of the bankruptcy, CMLP immediately flagged and closed the account and ceased all collection activities. Exhibit 6; Exhibit 12 at ¶ 24.

*Plaintiff's Reaction to the Letter*

37. Plaintiff claims to have suffered injury in the form of "anxiety and emotional distress." Complaint at ¶ 19.

38. Plaintiff's description of her emotional distress merely mention "anxiety" and "stress."  Exhibit 1 at 21-23; 32:18-22.

39. When she received the letter, Plaintiff was aware that the debt it described had already been discharged in her bankruptcy proceeding, and thus knew she would not be required to pay that debt.  Exhibit 1 at 33:13-24; 35:25-36:3.

40. Plaintiff began seeing a mental health professional to treat postpartum depression in approximately Fall of 2019.  Exhibit 1 at 45:22-47:3.

41. Plaintiff began seeing a mental health professional again in approximately May of 2020.  Exhibit 1 at 44:3-25.

42. Plaintiff began seeing this mental health professional prior to CMLP sending the Letter.  Exhibit 1 at 45:1-4.

43. Plaintiff started seeing this mental health professional to treat anxiety, which was partially related to her bankruptcy proceedings.  Exhibit 1 at 34:17-35:2.

44. Plaintiff's anxiety is related to her bankruptcy proceedings as a whole, and is not related to her receiving CMLP's letter.  Exhibit 1 at 35:3-12.

45. Plaintiff has not discussed CMLP's letter with her mental health professional. Exhibit 1 at 35:13-15.

46. Plaintiff has not discussed CMLP's letter with anyone other than her husband, her attorney, and the parties to this lawsuit.  Exhibit 1 at 35:16-24.

47. Plaintiff anticipates that her husband's testimony would mention his knowledge of the debt, the fact that the debt was discharged, the fact that there was a collection letter, and the fact that Plaintiff was deposed.  Exhibit 1 at 34:5-8.

48. Upon receiving CMLP's letter, the only action Plaintiff took was to give the letter to her attorneys. Exhibit 1 at 35:25-36:10.

49. The attorneys to whom Plaintiff gave the letter were already engaged in representing her concerning multiple other ongoing matters. Exhibit 1 at 50:9-16; 51:12-17.

Dated: May 7, 2021

Respectfully Submitted,

**MALONE FROST MARTIN PLLC**
*Attorneys for Defendant*

/s/ PATRICK A. WATTS
PATRICK A. WATTS, IL Bar #6302112
150 S. Wacker Dr., Ste. 2400
Chicago, IL 60606
P: (312) 741-0990
F: (888) 632-6937
pwatts@mamlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 7, 2021, the foregoing was filed electronically with the Clerk of the Court and served by operation of the Court's electronic filing system to the following counsel of record:

Mohammed O. Badwan
Joseph S. Davidson
Victor T. Metroff
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
mbadwan@sulaimanlaw.com
jdavidson@sulaimanlaw.com
vmetroff@sulaimanlaw.com

*/s/ PATRICK A. WATTS*