UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA A. TWARDOWSKI | § § | |
| Plaintiff, | § § | Civil Action No. 1:20-cv-04285-MFW |
| v. | § | **PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS** |
| | § § | |
| CREDIT MANAGEMENT, LP | § § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

NOW COMES Plaintiff, JESSICA A. TWARDOWSKI ("Plaintiff"), by and through her undersigned counsel, responding to CREDIT MANAGEMENT, LP's ("CMLP") Statement of Material Facts as follows:

*Plaintiff's Bankruptcy*

1. On February 18, 2020, Plaintiff and her husband, Ryan Twardowski, filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. Exhibit 3.

    **Response:** Undisputed.

2. In her bankruptcy schedule, Plaintiff included a debt owed to "AllianceRx Walgreens Prime," for the amount of $165.00. Exhibit 3 at 22.

    **Response:** Undisputed.

3. The above-referenced Bankruptcy Petition was granted, with an order of discharge entered June 18, 2020, in Cause. No. 20-04391. Exhibit 4.

    **Response:** Undisputed.

7

*CMLP's Policies and Procedures*

4. CMLP is a company that engages in collecting third-party debts for its clients. Exhibit 2 at 9:18-21.

**Response:** Undisputed.

5. At any given time, CMLP services hundreds of thousands of debts for approximately fifty clients. Exhibit 2 at 16:1-17:6.

**Response:** Undisputed.

6. It is CMLP's policy not to engage in collection activity on accounts it knows to be subject to bankruptcy. Plaintiff's Exhibit 1 at 27:18-22; 67:20-68:6; Defendant Exhibit 8; Defendant Exhibit 12 at ¶ 6.

**Response:** Undisputed that Defendant contends that it maintains a policy to engage in collection activity on accounts it knows to be subject to bankruptcy. Plaintiff disputes that Defendant adequately maintains or adheres to such policy as Defendant attempted to collect a discharged debt from Plaintiff. See Defendant's Exhibit 5 of Defendant's Statement of Material Facts.

7. It is CMLP's policy not to accept placement of accounts from creditors when it is known by the creditor that the account is subject to bankruptcy. Defendant's Exhibit 12 at ¶ 4.

**Response:** Disputed. Defendant accepted the placement of the subject account despite the fact that the creditor had actual knowledge of Plaintiff's bankruptcy. See Defendant Exhibit 3 and 4. Specifically, Plaintiff duly scheduled the subject account in her bankruptcy schedules and therefore the creditor had actual knowledge of Plaintiff's bankruptcy. See Defendant's Exhibit 3 (bankruptcy schedules). Despite the creditor having knowledge of Plaintiff's bankruptcy, Defendant still accepted the placement of the subject account. See Defendant Exhibit 6. Moreover, Defendant's written policies and

7

procedures make no mention of CMLP's policy not to accept placement of accounts from creditors when it is known by the creditor that the account is subject to bankruptcy. *See* Defendant Exhibit 7 ("Scrubbing New Placements for Bankruptcy, Deceased, and Litigious Consumers – Procedure") Defendant Exhibit 8 ("Policy & Procedure for Accounts Subject to Bankruptcy – Including Scrubbing, Monitoring & Filing Proof of Claims"); Defendant Exhibit 9 ("Bankruptcy"); Defendant Exhibit 10 ("Disputes – Consumer Filed Bankruptcy. See Plaintiff's Exhibit 1 (at 77;5-22; 78;1-7.)

8. Creditors for whom CMLP collects debts have an affirmative duty to inform CMLP if an account is subject to bankruptcy, and that information is either automatically received from creditors or comes in through clients' contact with a Client Services representative. Plaintiff's Exhibit 1 at 69:17-70:7; 71:6-19; Defendant's Exhibit 12 at ¶ 5.

**Response:** Undisputed that the declaration cited by CMLP avers that creditors have an affirmative duty to inform CMLP if an account is subject to bankruptcy. However, CMLP's deposition testimony demonstrates that no such affirmative duty exists. Plaintiff's Exhibit 1 at 69:17-22, 70, 1-7;

9. Every time CMLP receives a new account, it sends the account information to a third-party vendor, LCI, to identify whether the account is subject to bankruptcy (a process known as a "scrub.") Exhibit 8 at ¶ 5.1.1; Exhibit 7; Exhibit 12 at ¶ 7.

**Response:** Disputed. Defendant's deposition testimony revealed that _____,. Plaintiff's Exhibit 1 at 13;9-19.

10. It is CMLP's policy to subject every new account to a bankruptcy scrub. Exhibit 8 at ¶ 5.1.1; Exhibit 7 at ¶ 4; Exhibit 12 at ¶ 7.

**Response:** Undisputed. However, CMLP's "bankruptcy scrub" procedure is nothing more than reliance on information provided by a third party. In other words, CMLP

does not have any policies and procedures to independently verify that the information received from the third party is accurate. Defendant's Exhibit 7 at ¶ 1 and 4; Defendant's Exhibit 8 at ¶ 5.1.1; Defendant's Exhibit 12 at ¶ 8.

11. If LCI identifies that an account or debtor is subject to bankruptcy, it returns that information to CMLP. Exhibit 8 at ¶ 5.1.1; Exhibit 12 at ¶ 8.

   **Response:** Undisputed.

12. If LCI does not initially detect that a new account is subject to bankruptcy, it continues to monitor that account to identify if the account ever becomes subject to bankruptcy at a later date. Exhibit 8 at ¶ 5.1.2; Exhibit 2 at 34:21-35:11; 70:13-21; Exhibit 12 at ¶ 9-10.

   **Response:** Undisputed as to the policy in place. Disputed as to the fact that LCI continued to monitor Plaintiff's subject account. See Plaintiff's Exhibit 1 at 38;4-22; 39;1-5.

13. If LCI later identifies an account has become subject to bankruptcy, it returns an updated report to CMLP. Exhibit 2 at 61:5-9; Exhibit 12 at ¶ 10.

   **Response:** Undisputed.

14. Based on CMLP's experience working with LCI, CMLP considers LCI a reliable vendor. Exhibit 2 at 40:13-41:10.

   **Response:** Disputed. LCI is an unreliable source as demonstrated by its failure to identify Plaintiff's bankruptcy filing. Plaintiff's Exhibit 1 at 41:6-10.

15. LCI has not provided unreliable information to CMLP in the past. Exhibit 2 at 41:2-5.

   **Response:** Disputed. LCI provides CMLP with unreliable information as demonstrated by the inaccurate information it provided CMLP with respect to Plaintiff's bankruptcy. Plaintiff's Exhibit 1 at 41:6-10.

16. When CMLP is notified that any account is subject to bankruptcy, its policy is to

7

immediately mark that the account is subject to bankruptcy, which is done automatically if the information is received through an automated process or manually if the information is received by a Client Services representative, and to automatically withdraw the account or place it on a permanent hold. Exhibit 2 at 71:6-19; Exhibit 8 at ¶ 5.2.2; Exhibit 12 at ¶ 11-12.

  **Response:** Undisputed.

  17. When CMLP receives notice from a client, debtor, or other entity that an account is subject to bankruptcy, its procedure is to similarly mark that the account is subject to bankruptcy. Exhibit 2 at 69:3-16; 69:17-70:7; 71:6-19; Exhibit 12 at ¶¶ 11-12.

  **Response:** Undisputed.

  18. When CMLP receives a dispute from a consumer noting a bankruptcy, employees in the Account Resolution Department timely process those disputes and mark that the account is subject to bankruptcy. Exhibit 9; Exhibit 12 at ¶¶ 11-12.

  **Response:** Undisputed.

  19. When CMLP marks that an account is subject to bankruptcy, whether it receives bankruptcy through a scrub, from the client, from a third-party, a consumer, or a consumer's attorney, its policy is to take no further collection action on that account. Exhibit 2 at 71:20-72:10; Exhibit 12 at ¶ 12.

  **Response:** Undisputed.

  20. CMLP's policy of ceasing collection on any accounts subject to bankruptcy applies equally to circumstances when CMLP is notified of the bankruptcy through a bankruptcy scrub, it receives the bankruptcy information from a client or other third-party, or receives a dispute from a consumer noting the account is subject to bankruptcy. Exhibit 2 at 71:20-72:3; Exhibit 9; Exhibit 10; Exhibit 12 at ¶¶ 11-12.

  **Response:** Undisputed

21. The policies described here are memorialized and available to all employees, and are included in regular training, including a quarterly refresher course for any employee handling consumer accounts. Exhibit 2 at 28:3-29:10; Exhibit 7; Exhibit 8; Exhibit 9; Exhibit 10; Exhibit 12 at ¶ 13.

**Response:** Disputed. Defendant's Exhibits 7, 8, 9 and 10 make no mention of regular training, including a quarterly refresher course for any employee handling consumer accounts. Disputed as CMLPs deposition testimony at Plaintiff's Exhibit 1 at 28:3-29 does not specifically discuss Defendant's Exhibit 7, Exhibit 8, Exhibit 9, Exhibit 10. Specifically, CMLP's deposition testimony only discusses training regarding accounts that are discovered to be in bankruptcy and does not address policies and procedures prior to the beginning of collection on an account.

22. CMLP does not commence collection activity on an account unless and until it receives a negative response from its bankruptcy scrub. Exhibit 2 at 23:5-9.

**Response:** Disputed. Defendant's deposition testimony revealed that CMLP accepts accounts from its clients and starts collecting on the debt immediately. Moreover, Defendant's written policies and procedures do not reflect that CMLP does not commence collection activity on an account unless and until it receives a negative response from its bankruptcy scrub. *See* Defendant's Exhibit 7 ("Scrubbing New Placements for Bankruptcy, Deceased, and Litigious Consumers – Procedure"); Defendant's Exhibit 8 ("Policy& Procedure for Accounts Subject to Bankruptcy – Including Scrubbing, Monitoring & Filing Proof of Claims").; Notably, Defendant's policies and procedures suggest that collection activity begins immediately after an account is placed with Defendant and do not reflect that CMLP will not commence collection activity until it receives a negative response from its bankruptcy scrub. *See* Defendant's Exhibit 8 at ¶5.1.2; Defendant's Exhibit 9 ("Bankruptcy") Defendant's Exhibit 10 ("Disputes – Consumer Filed

Bankruptcy").

*The Subject Account*

23. On June 29, 2020, CMLP received an account from its client AllianceRx Walgreens Prime ("Walgreens") that reflected a $165.00 debt owed by Plaintiff Jessica Twardowski ("the Account"). Exhibit 6; Exhibit 12 at ¶ 15.

**Response:** Undisputed.

24. When it received the Account from Walgreens, CMLP was not notified by Walgreens that the Account was subject to bankruptcy. Exhibit 2 at 39:6-13; Exhibit 12 at ¶ 16.

**Response:** Undisputed.

25. At no time after it received the Account did CMLP receive notification from Walgreens that the Account was subject to bankruptcy. Exhibit 12 at ¶ 16.

**Response:** Undisputed.

26. At no time before or after it received the Account did CMLP receive notice from the Bankruptcy Court that the Account was subject to bankruptcy. Exhibit 12 at ¶ 17.

**Response:** Undisputed.

27. CMLP followed all its regular policies and procedures as it processed the Account. Exhibit 2 at 40:1-12; Exhibit 12 at ¶ 14.

**Response:** Disputed. CMLP's reference to Defendant's Exhibit 2 at 40:1-12 does not specifically state that CMLP followed all its regular policies and procedures as it processed the Account. Specifically, Defendant's Exhibit 2 at 40:1-12 states that "CMLP handled Plaintiff's subject account like it handled other accounts" and does not state that it handled the Account consistent with its policies and procedures. Had CMLP properly handled the Account, it would not have attempted to collect a discharged debt. *See.* Exhibit 5.

28. On the day the Account was received, CMLP sent the Account information to LCI

7

and requested a bankruptcy scrub. Exhibit 6; Exhibit 12 at ¶ 18.

    **Response:** Undisputed.

29. LCI did not return any information noting the Account was subject to bankruptcy. Exhibit 2 at 38:4-12; Exhibit 12 at ¶ 19.

    **Response:** **Un**disputed.

30. At no time after CMLP initially sent the Account to LCI for a bankruptcy scrub did LCI notify CMLP that the Account was subject to bankruptcy. Exhibit 2 at 38:13-39:5; Exhibit 12 at ¶ 19.

    **Response:** **Un**disputed.

31. On July 1, 2020, CMLP sent Plaintiff a letter notifying her that it held the Account and informing her of her rights to validate and dispute the subject debt. Exhibit 5 ("the Letter"); Exhibit 2 at 42:22-43:12; Exhibit 12 at ¶¶ 20-21.

    **Response:** Undisputed.

32. CMLP sent the Letter after LCI returned a negative bankruptcy scrub indicating it had not identified a bankruptcy that applied to the account. Exhibit 2 at 32:7-17; Exhibit 12 at ¶¶ 18-21.

    **Response:** **Un**disputed.

33. On July 21, 2020, Plaintiff filed suit in this Court seeking damages under the FDCPA and claiming CMLP attempted to collect on an account that was subject to bankruptcy. Exhibit 11; Exhibit 12 at ¶ 22.

    **Response:** Undisputed.

34. At no time prior to the filing of this lawsuit did Plaintiff attempt to dispute the debt or otherwise inform CMLP of the bankruptcy. Exhibit 6; Exhibit 1 at 35:25-36:10; Exhibit 12 at ¶ 23.

**Response:** Undisputed.

35. At the time it sent the Letter, CMLP was not aware that the Account was subject to bankruptcy. Exhibit 2 at 37:17-21; Exhibit 5; Exhibit 12 at ¶ 21.

**Response:** Undisputed.

36. Upon learning of the bankruptcy, CMLP immediately flagged and closed the account and ceased all collection activities. Exhibit 6; Exhibit 12 at ¶ 24.

**Response:** Undisputed.

*Plaintiff's Reaction to the Letter*

37. Plaintiff claims to have suffered injury in the form of "anxiety and emotional distress." Complaint at ¶ 19.

**Response:** Undisputed. Plaintiff also claims that she was deprived of her fresh start after bankruptcy and was misled into believing that her bankruptcy was ineffective and had no legal effect. Defendant's Exhibit 1; 21; 21-25, 22;4-7.

38. Plaintiff's description of her emotional distress merely mention "anxiety" and "stress." Exhibit 1 at 21-23; 32:18-22.

**Response:** Disputed. Plaintiff described in detail what caused the anxiety and stress and did not "merely mention" anxiety and stress as Defendant contends. *See* Exhibit 1 at 22; 4-7.

39. When she received the letter, Plaintiff was aware that the debt it described had already been discharged in her bankruptcy proceeding, and thus knew she would not be required to pay that debt. Exhibit 1 at 33:13-24; 35:25-36:3.

**Response:** Disputed. Plaintiff testified that the letter misled her into believing she was still liable on the Account and that her bankruptcy discharge had no legal effect. *See* Defendant's Exhibit 1 at 21; 21-25; 22; 4-7; 33:13-24; 35:25-36:3.

7

40. Plaintiff began seeing a mental health professional to treat postpartum depression in approximately fall of 2019. Exhibit 1 at 45:22-47:3.

**Response:** Undisputed.

41. Plaintiff began seeing a mental health professional again in approximately May of 2020. Exhibit 1 at 44:3-25.

**Response:** Undisputed.

42. Plaintiff began seeing this mental health professional prior to CMLP sending the Letter. Exhibit 1 at 45:1-4.

**Response:** Undisputed.

43. Plaintiff started seeing this mental health professional to treat anxiety, which was partially related to her bankruptcy proceedings. Exhibit 1 at 34:17-35:2.

**Response:** Undisputed.

44. Plaintiff's anxiety is related to her bankruptcy proceedings as a whole, and is not related to her receiving CMLP's letter. Exhibit 1 at 35:3-12.

**Response:** Disputed. Plaintiff testified at her deposition that the letter caused her anxiety. Plaintiff concedes that she did not receive treatment because of the letter itself. See Defendant's Exhibit 1 at 21; 21-25; 22; 4-7; 33:13-24; 35:25-36:3.

45. Plaintiff has not discussed CMLP's letter with her mental health professional. Exhibit 1 at 35:13-15.

**Response:** Undisputed.

46. Plaintiff has not discussed CMLP's letter with anyone other than her husband, her attorney, and the parties to this lawsuit. Exhibit 1 at 35:16-24.

**Response:** Undisputed.

47. Plaintiff anticipates that her husband's testimony would mention his knowledge of

7

the debt, the fact that the debt was discharged, the fact that there was a collection letter, and the fact that Plaintiff was deposed. Exhibit 1 at 34:5-8.

        **Response:** Undisputed.

48. Upon receiving CMLP's letter, the only action Plaintiff took was to give the letter to her attorneys. Exhibit 1 at 35:25-36:10.

        **Response:** Disputed. Prior to sending the letter to her attorneys, Plaintiff read the letter and suffered anxiety and stress as she was misled into believing that she is still liable for the Account. Defendant's Exhibit 1 at 21; 21-25; 22; 4-7.

49. The attorneys to whom Plaintiff gave the letter were already engaged in representing her concerning multiple other ongoing matters. Exhibit 1 at 50:9-16; 51:12-17.

        **Response:** Undisputed.

Dated: June 16, 2021                          Respectfully Submitted,

                                                      /s/ *Victor T. Metroff*
                                                        Mohammed O. Badwan
                                                        Victor T. Metroff
                                                        *Counsel for Plaintiff*
                                                        Sulaiman Law Group, Ltd.
                                                        2500 S. Highland Ave., Ste. 200
                                                        Lombard, IL 60148
                                                        Phone: (630)575-8180
                                                        Fax: (630)575-8188
                                                        mbadwan@sulaimanlaw.com
                                                        vmetroff@sulaimanlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 16th, 2021, the foregoing was filed electronically with the Clerk of the Court and served by operation of the Court's electronic filing system to the following counsel of record:

> PATRICK A. WATTS, IL Bar #6302112
> 150 S. Wacker Dr., Ste. 2400
> Chicago, IL 60606
> P: (312) 741-0990
> F: (888) 632-6937
> pwatts@mamlaw.com

>> */s/ Victor T. Metroff*