UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSICA A. TWARDOWSKI, <br><br> Plaintiff, <br><br> v. <br><br> CREDIT MANAGEMENT, LP <br><br> Defendant. | Case No.: 1:20-cv-04285 <br><br> Honorable Matthew F. Kennelly |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**NOW COMES** Plaintiff, JESSICA A. TWARDOWSKI ("Plaintiff"), by and through her undersigned counsel, responding to CREDIT MANAGEMENT, LP's ("CMLP") Motion for Summary Judgment ("CMLP's Motion") as follows:

**INTRODUCTION**

CMLP's Motion seeks to dispose of this case in its entirety by seeking summary judgment in its favor with respect to Plaintiff's claims pursuant to the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff alleges that CMLP violated the FDCPA by attempting to collect a debt that was discharged in bankruptcy. Such damaging conduct violates the black letter law of the FDCPA and Defendant's attempt to deny the obvious must fail.

CMLP's Motion demonstrates its miscomprehension of the legal standard at summary judgment. Instead of acknowledging the presence of disputed material facts, which preclude summary judgment, CMLP's Motion inappropriately asks the Court to adjudicate disputed facts in its favor.

CMLP's Motion must fail for multiple reasons. First, its bona fide error defense is replete with factual questions that cannot be decided at the summary judgment stage. Secondly, Plaintiff

1

has demonstrated a sufficient injury in fact that confers Article III standing. Thus, for the reasons stated below, CMLP's Motion must be denied as a matter of law.

## LEGAL STANDARD

### Summary Judgment Legal Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003).

## ARGUMENT

### I.    Plaintiff Has Article III Standing To Pursue Her Claims.

"Article III limits federal courts to resolving 'Cases' and 'Controversies.' To ensure that what is before them is in fact a case or controversy, federal courts require that plaintiffs have 'standing' to sue. That means a plaintiff must have suffered an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Markakos v. Medicredit, Inc.*, 2021 U.S. App. LEXIS 14339, at *2 (7th Cir. 2021) (internal citations omitted). "An injury in fact is an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id. citing Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992) (internal quotations omitted). "An injury is particularized if it 'affect[s] the

plaintiff in a personal and individual way,' and it is concrete if it is 'real, and not abstract.'" *Pennell v. Global Trust Mgmt. LLC*, 990 F.3d 1041, 1044 (7th Cir. 2021) (internal citations omitted) *citing Lujan,* 504 U.S. at 560 and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). "But a concrete injury need not be tangible; a risk of real harm can constitute concrete harm." *Pennell,* 990 F.3d at 1044 *citing Spokeo Inc.,* 136. S. Ct. at 1549. "For a statutory violation, a plaintiff does not automatically satisfy concreteness 'whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* "That is because 'a bare procedural violation, divorced from any concrete harm' cannot satisfy the injury-in-fact requirement." *Id.*

"As the party invoking the court's jurisdiction, the plaintiff bears the burden of establishing the elements of standing." *Spuhler v. State Collection Serv.,* 983 F.3d 282, 285 (7th Cir. 2020) *citing Spokeo,* 136 S. Ct. at 1547. "Once the allegations supporting standing are questioned as a factual matter—either by a party or by the court—the plaintiff must support each controverted element of standing with competent proof, which we've understood as a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (internal citations and quotations omitted). "Once the action reaches the summary-judgment stage, the plaintiff must demonstrate standing by setting forth by affidavit or other evidence specific facts that, taken as true, support each element of standing." *Id.*

Here, Plaintiff has Article III standing because (1) she has set forth corroborated evidence of a particularized and concrete injury-in-fact that is traceable to the Defendant's conduct, and (2) Plaintiff's injury is redressable by a favorable decision. Specifically, after receiving CMLP's Letter that falsely represented that Plaintiff was still liable for a debt that was discharged in

3

bankruptcy, Plaintiff suffered significant emotional distress. *See* Plaintiff's Response to Statement of Material Fact Nos. 37, 38, and 39. Plaintiff's damages were specifically caused by the false representations in CMLP's Letter as the false representations misled Plaintiff into believing that she was still liable for the debt that was discharged in her bankruptcy. *See* Defendant's Exhibit 1 at 21; 21-25; 22; 4-7; 33:13-24; 35:25-36:3.

As demonstrated by Plaintiff's testimony, the detailed emotional distress suffered by Plaintiff was unquestionably a particularized and concrete harm that lasted for an extended duration. *See* Defendant's Exhibit 1 at 21; 21-25; 22; 4-7; 33:13-24; 35:25-36:3.

In other words, Plaintiff's damages were not speculative or fleeting; instead, the damages were real and lasting. Simply put, the harm suffered by Plaintiff in this case was real and not abstract. *See Spokeo,* 136 S. Ct. at 1548 (holding that a concrete harm is one that is "real and not abstract"). Moreover, it is undeniable that Plaintiff's injuries can be redressed by a jury verdict that compensates Plaintiff for her injuries. Accordingly, Plaintiff has Article III standing to pursue her claims in federal court.

Notably, the false representations in Defendant's Letter resulted in the precise harm that the FDCPA was enacted to eliminate. Specifically, as the Seventh Circuit recently recognized, the FDCPA was enacted after "Congress found that rampant 'abusive, deceptive, and unfair' collection practices were contributing to 'personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.'" *Markakos*, 2021 U.S. App. LEXIS 14339, at *13 *citing* 15 U.S.C. §1692(a) (emphasis added). Here, it is objectively unfair for CMLP to attempt to collect a discharged debt, especially considering that bankruptcy filings are public record that are readily available to the general public. One would think that the first thing a debt collector would do is check the public record before pursuing a debt. Moreover, being dunned for a debt that one

believed was discharged is inherently distressing as it frustrates the whole purpose of the Bankruptcy Code, which is to provide a debtor with a fresh start.

Based on Plaintiff's detailed testimony regarding the emotional distress damages caused by Defendant's Letter, there could be no question that Plaintiff has Article III standing as she suffered the precise harm that Congress enacted the FDCPA to eliminate. Courts have consistently recognized that dunning a debtor for a debt that was not owed confers Article III standing. *See Demarais v. Gurstel Chargo*, P.A., 869 F.3d 685, 699 (8th Cir. 2017) (finding Article III standing in an FDCPA case where a debt collector attempted to collect a debt not owed by plaintiff;); *Buchholz v. Tanick*, 946 F.3d 855, 869 (6th Cir. 2020) (citing *Demarais* and acknowledging that *Demarais* was correctly decided); *Johnson v. Wetsch Abbott Osborn Van Vliet Plc*, 2019 U.S. Dist. LEXIS 225822, at *11 (S.D. Iowa 2019) (acknowledging that the pursuit of a debt not owed confers Article III standing in an FDCPA case). Finding that Plaintiff has no standing would effectively render the FDCPA obsolete and would egregiously frustrate Congress' intent to eliminate the precise harm that the FDCPA was enacted to combat.

    a. **CMLP'S Attempts to Discount Plaintiff's Damages Must Fail.**

Specifically, CMLP's Motion completely glosses over two incredibly important and contextual facts. *See* Defendant's Exhibit 1, 21:21-25, 22:4-7. At her deposition, Plaintiff testified under oath that the false representations in Defendant's Letter caused stress in her life. Specifically, Plaintiff provided the following sworn testimony:

> Q: You used the word anxious, and I wanted – I want to determine exactly what it is that made you anxious, the totality of those circumstances. So what is it that made you anxious? The last question I have is you indicated that this really had an effect on your marriage earlier. Can you further expound on that?
> A: It's anxious to not *know if the debt was discharged* and to *know if there was any other debts not discharged*, if the bankruptcy didn't, you know, fully go through. And I know we included that in the bankruptcy schedule. So – I mean, that is worrisome.
> Q: I'm just trying to drill down into this a little. When you say that is worrisome, what are you referring to?

5

> A: When you get a debt collection letter – and it really took me by surprise. It made me anxious. The letter made me anxious because it was worrisome that it wasn't fully discharged or --….

As demonstrated by Plaintiff's testimony, CMLP's Letter caused Plaintiff to not only worry about the particular debt that CMLP was attempting to collect, but to also worry about the overall status of Plaintiff's bankruptcy filing. In other words, the anxiety caused by CMLP's Letter ballooned to anxiety about the legal effect of Plaintiff's bankruptcy discharge as the letter misled Plaintiff into believing that she may still be liable for *all* the debts that were discharged in her bankruptcy. Such elevated anxiety is unquestionably a concrete harm that confers Article III standing.

CMLP heavily relies on *Brunett v. Convergent Outsourcing, Inc*., 982 F.3d 1067 (7th Cir. 2020) to support its proposition that Plaintiff does not have Article III standing. In *Brunett,* the plaintiff sued defendant after receiving a letter that contained an alleged false representation regarding the tax consequences arising from the forgiveness of the debt at issue. *Id.* at 1067-68. The plaintiff testified at her deposition that the letter *did not mislead* her to her detriment and that the letter *did not otherwise injure her*. *Id.* at 1068 (emphasis added). Unlike the plaintiff in *Brunett,* Plaintiff was misled to her detriment into believing that her bankruptcy discharge had no legal effect and that she was still liable for a debt that was discharged in bankruptcy. As a result, unlike the plaintiff in *Brunett,* Plaintiff suffered cognizable injuries in the form of elevated emotional distress. In light of the disparity between the alleged damages in *Brunett* and the case at bar, *Brunett* is distinguishable and does not bar Plaintiff from pursuing her FDCPA claims in federal court.

CMLP also relies on *Pennell v Global Trust Mgmt., LLC, 990* F.3d 1041, 1045 (7th Cir. 2021) to support its contention that Plaintiff does not have Article III standing. In *Pennell,* the

court held that the plaintiff did not have standing because she was unable to show that a collection letter led her to "change her course of action or put her in harm's way." Here, unlike the plaintiff in *Pennell,* Plaintiff reacted to the letter by reaching out to her bankruptcy counsel to verify that her bankruptcy was successful. *See* Plaintiff's Response to Statement of Material Fact No. 48. In other words, but for CMLP's attempt to collect a discharged debt, Plaintiff would not have questioned the legal effect of her bankruptcy nor would she have lost time conferring her counsel. There is no question that misleading a discharged debtor into believing their bankruptcy had no legal effect puts the debtor in "harm's way" as she now has to address the possibility of having to pay back all the debt that was discharged in bankruptcy.

    CMLP's Motion harps on the fact that Plaintiff immediately sent the letter to her counsel and therefore was not harmed. CLMP's argument is unpersuasive because had the Plaintiff not contacted her counsel, then CMLP would argue that Plaintiff could not have suffered any harm as she did not even reach out to her counsel to address her fears that her bankruptcy discharge had no legal effect. The fact that Plaintiff immediately reached out to her counsel corroborates Plaintiff's contention that she suffered significant emotional distress after reading the letter and believing she is still liable for the debt. Simply put, this court should not punish Plaintiff for acting swiftly, in fear that her bankruptcy discharge had no legal effect, in response to an illegal collection attempt by CMLP.

    There is no question that Plaintiff suffered an injury-in-fact that confers Article III standing. Finding otherwise will effectively render the FDCPA obsolete, leaving consumers with no recourse for the rampant abusive conduct by debt collectors that inspired Congress to enact the FDCPA. For the foregoing reasons, the Court should find that Plaintiff has Article III standing to pursue her claims in federal court.

## II. CMLP's Bona Fide Error Defense Must Fail as it Presents Questions of Fact that Cannot be Decided at Summary Judgment.

The bona fide error defense provides a defense to a debt collector who shows by a preponderance of evidence that the violation was (1) not intentional; (2) the violation resulted from a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error. *Kort v. Diversified Collection Servs., Inc.,* 394, F.3d 530, 536 *citing* 15 U.S.C. §1692k(c). The bona fide error defense is an affirmative defense in which the defendant bears the burden of proof. *See Alexander v. Unlimited Progress Corp.,* 2004 U.S. Dist. LEXIS 21013, at *10 (N.D. Ill. 2004) (defendant bears the burden of proving the bona fide error defense); *Edmonds v. Nat'l Check Bureau, Inc.,* 2003 U.S. Dist. LEXIS 17476, at *18 (S.D. Ind. 2003) ("Because 'bona fide error' is an affirmative defense under the [FDCPA], a defendant bears the burden of proving" the elements to the defense); *Gonzalez v. Lawent,* 2005 U.S. Dist. LEXIS 9504, at *18 (N.D. Ill. 2005) (bona fide error defense is an affirmative defense that the defendant bears the burden of proving).

Whether a debt collector is entitled to the bona fide error defense is usually a question of fact. *See Ferris v. Convergent Outsourcing, Inc.,* 2019 U.S. Dist. LEXIS 52237, at *17-26 (N.D. Ill. 2019) (denying summary judgment on debt collector's bona fide error defense; finding the defense to be a question of fact); *Keisler v. Encore Receivable Mgmt.,* 2008 U.S. Dist. LEXIS 31987, at *15 (S.D. Ind. 2008) (finding that a debt collector's bona fide error defense was a question of fact); *Ramirez v. Palisades Collection LLC,* 2008 U.S. Dist. LEXIS 48722, at *19-20 (N.D. Ill. 2008) (finding genuine issue of fact with respect to the bona fide error defense precluded summary judgment); *Rosado v. Taylor,* 324 F. Supp. 2d 917, 933 (N.D. Ind. 2004) (denying cross-motions for summary judgment on debt collector's bona fide error defense; finding issues of material fact).

CMLP contends that it cannot be held liable for the alleged violations of the FDCPA because it is protected by the bona fide error defense. Specifically, CMLP contends that it has satisfied all three elements of the bona fide error defense and thus summary judgment must be entered in its favor. CMLP's contention must be rejected because it has failed to establish as a *matter of law* that (1) the violation was unintentional; (2) the violation resulted from a bona fide error; and (3) it maintains procedures reasonably adapted to avoid the error. Moreover, as courts have consistently held, if a debt collector's bona fide error defense is replete with factual issues it cannot be decided at summary judgment.

### a. CMLP Failed to Follow its Own Policies and Procedures.

CMLP contends that it engages in a multi-pronged procedure to avoid violations like the one that occurred against Plaintiff. Specifically, CMLP contends that its policy is not to accept any accounts from creditors where the creditor knows the account is subject to bankruptcy. *See* Defendant's Exhibit 12 ¶ 4. Here, there is no question that CMLP's client Walgreens had knowledge of Plaintiff's bankruptcy discharge. Specifically, it is undisputed that Plaintiff duly listed Walgreens on her bankruptcy petition. Accordingly, there is no reason to believe that Walgreens did not have knowledge of Plaintiff's bankruptcy. Notably, CMLP does not and cannot argue that Walgreens did not have knowledge of Plaintiff's bankruptcy. Despite Walgreens having actual knowledge of Plaintiff's bankruptcy, CMLP still accepted the placement of the debt, in direct violation of CMLP's own policies and procedures.

There are questions of fact as to how CMLP attempted to comply with the next steps of their policy and procedures. Specifically, CMLP sent some information to LCI (Defendant's third party monitoring company) to perform a "bankruptcy scrub", but the totality and specific information that was sent is unknown. CMLP's Motion discusses generally what was sent, but a

9

complete account of the information sent to LCI in its native form is unavailable. Plaintiff expects this information to be revealed at trial, and the trier of fact will determine if it was sufficient to comply with CMLP's policies. What we do know at this point is that CMLP received some information from LCI that showed Plaintiff was not subject to bankruptcy. The following sworn testimony provided by CMLP's corporate witness discusses that information: (Plaintiff's Exhibit 1 at Page 37-38).

> Q: And at the time that Credit Management sent the collection letter that was referenced in the complaint, paragraph 17, were they aware of the bankruptcy discharge?
> A: No
> Q: Can you provide me some details regarding why the information was not provided to Credit Management?
> A: When we sent the information to LCI, they matched it up against their database and they did not consider it a hit from the information that they had in PACER, so they didn't send us back a notification saying that there had been any bankruptcy activity.

CMLP continues to explain that, in addition to this initial "scrub," LCI continues to monitor accounts and update CMLP if it finds new bankruptcy information that applies to any of CMLP's current accounts. DSMF 12-13. Notably, CMLP again, during the second step of CMLP's policies and procedures, failed to comply. Specifically, CMLP's corporate witness provided the following sworn testimony: (Plaintiff's Exhibit 1 at Page 38-39)

> Q: Do you know if LCI provided continuous or rolling updates on Ms. Twardowski's account that we have previously discussed? And when I say previously discussed, LCI provides rolling and updated information to Credit Management on active files. Do you know if there was updated information provided by LCI?
> A: On this particular account?
> Q: Yes
> A: Not to my knowledge, no.
> Q: Do you know why there wasn't any information provided?
> A: Again, because they didn't consider it a hit based on the information that we provided to them.

CMLP's own policy and procedures show that Bankruptcy Monitoring will continue to be monitored by their vendor to protect against those situations in which a bankruptcy was filed after the account was placed with CMLP for collections. Defendant's Exhibit 8 Paragraph 5.2.1. As demonstrated above, CMLP has failed to follow numerous policies and procedures. Numerous

questions of fact exist as to whether the violation was intentional or not, and such questions can only be answered by a trier of fact.

Specifically, in order to be entitled to the bona fide error defense, a debt collector must actually employ or implement its policies. *Johnson v. Riddle,* 443 F.3d 723, 729 (10th Cir. 2006). Furthermore, a *bona fide* error is "an error made in good faith; a genuine mistake, as opposed to a contrived mistake." *Ross*, No. 04 C 6557, 2006 U.S. Dist. LEXIS 11407 at *22. *Ali v. Portfolio Recovery Assocs., LLC*, 2018 U.S. Dist. LEXIS 168877, *22. Here, instead of offering evidence to establish that it actually employs and implements its purported policies, CMLP glosses over the specifics. CMLP's Motion does not offer any evidence on *how* it implements and trains its employees on its purported policies. CMLP provides no support as to why their policies and procedures were not followed in the collection of Plaintiff's subject debt. All the information provided leaves a genuine issue of material fact as to whether the error was in good faith or contrived, with a preponderance of the evidence leaning towards a contrived mistake.

Based on CMLP's reasoning, a debt collector would be able to skirt FDCPA liability by merely creating policies but not actually implementing and following them. CMLP's reasoning must be rejected because it would render the FDCPA obsolete as it would allow debt collectors to violate the FDCPA with impunity. Here, Plaintiff has presented evidence that suggests that CMLP did not actually employ or implement its purported policy pertaining to Plaintiff's subject debt. Accordingly, CMLP has failed to satisfy the bona fide error defense, and thus is not entitled to summary judgment in its favor.

      **b. CMLP's Policies And Procedures Do Not At Minimum Have A Process To Inform Employees What Actions To Take In Certain Circumstances To Avoid Error And Thus Are Not Reasonable.**

In the event the Court finds that CMLP's violation was unintentional and resulting from a

bona fide error, CMLP is still not entitled to summary judgment on its bona fide error defense because whether CMLP's procedures were reasonably adapted to avoid the error is a question of fact. Specifically, "the inquiry as to whether a given procedure is reasonable is by its nature fact-intensive and, therefore, typically reserved for a jury." *Narwick v. Wexler*, 901 F. Supp. 1275, 1282 (N.D. Ill. 1995); *Thomas v. Bowman Heintz Boscia & Vician, P.C., & Ind. Prof'l Corp.*, 2009 U.S. Dist. LEXIS 77305, at *9-10 (S.D. Ind. 2009) (same); *Gaisser v. Portfolio Recovery Assocs., LLC*, 593 F. Supp. 2d 1297, 1303 (S.D. Fla. 2009) (holding that the question of whether the debt collector implemented procedures to reasonably avoid FDCPA violations was one for the jury).

As cited in CMLP's Motion, a reasonable procedure is one that is reasonably adapted to avoid clerical or factual errors through processes that have mechanical or other such regular orderly steps. *Leeb v Nationwide Credit Corp.*, 806 F.3d 895, 899 (7th Cir. 2015). At a minimum, such processes or mechanical steps should inform employees what actions they should take in certain circumstances, rather than just represent a "thinly specified 'policy' allegedly barring some action but saying nothing about what action to take." *Id.* at 900.

Reviewing CMLP's procedures shows that they are merely thinly specified policies and say nothing about what specific action to take to prevent errors. CMLP's Motion states that CMLP's policy is not to accept any accounts from creditors where the creditor knows the account is subject to bankruptcy. CMLP's Motion page 11. Specifically, CMLP refers us to a declaration at DSMF 7. A review of CMLP's policy provides no specific information as to what action to take to ensure that CMLP complies with this procedure. CMLP procedure is merely a declaration by their corporate representative.

Moreover, CMLP's policy and procedure provide no specifics regarding what action is to be taken by employees to ensure that accounts are continuously monitored by their third party

12

provider, LCI. CMLP's own policy and procedures show that Bankruptcy Monitoring will continue to be monitored by its vendor to protect against those situations in which a bankruptcy was filed after the account was placed with CMLP for collections. Defendant's Exhibit 8 Paragraph 5.2.1. However the procedure provides no specifics as to what employees should do to ensure that the policies and procedures are followed. As discussed above, both of these significant procedures were not followed; nor do CMLP's own policy and procedures explain in specifics what employees should or should not do to ensure these, and other, policies and procedures are followed.

In light of the factual issues pertaining to CMLP's procedures, the Court should find that CMLP is not entitled to summary judgment on its bona fide error defense as a matter of law.

### c. Blind Reliance on Information Provided by a Third Party is Insufficient to Support a Bone Fide Error.

CMLP contends that its reliance on information from a third party scrub vendor is sufficient as a matter of law. Specifically, CMLP contends that it utilizes a third party vendor, LCI, to scrub a new account for bankruptcy. Upon receipt of a new account DSMF 8-11. Under this procedure, new accounts are sent to LCI, which compares the new placements with information from their database to look for bankruptcy filings and identify accounts subject to bankruptcy. *Id.*

In other words, CMLP *solely* relied on information from LCI in determining that Plaintiff's debt was not discharged. Such blind reliance is insufficient because sole reliance on information provided from a third party is insufficient to establish the bona fide error defense. *Kottler v. Gulf Coast Collection Bureau, Inc.* (11th Cir. 2021) (affirming district court's rejection of the bona fide error defense where debt collector solely relied on information provided to it by a third party); *Mercedes v. Nat'l Bus. Factors Inc.*, 979 F.3d 758, 763 (9th Cir. 2020) (finding that "unquestioned reliance on a [third party's] information" does not support a bona fide error defense; noting that such reliance was "not a procedure reasonably adapted to avoid receiving inaccurate

13

information"); *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1007 (9th Cir. 2008) (affirming a district court's rejection of the bona fide error defense where the debt collector relied on information from a third party); *Scott v. Portfolio Recovery Assocs., LLC*, 139 F. Supp. 3d 956, 972 (S.D. Iowa 2015) (rejecting bona fide error defense where debt collector relied on false information provided by a third party vendor).

Simply put, CMLP's procedures cannot be found to be adequate as CMLP has not offered any evidence to establish that it maintained procedures to *verify* that the information it was provided by LCI was accurate. Based on the foregoing, CMLP's blind reliance on information provided by LCI frustrates its bona fide error defense.

## CONCLUSION

CMLP's Motion for Summary Judgment blatantly ignores the evidence in this case and the legal standard for summary judgment. Plaintiff has presented sufficient evidence in which a reasonable jury in federal court could return a verdict in her favor. Accordingly, CMLP is not entitled to summary judgment as a matter of law.

Respectfully Submitted,

Dated: June 16th, 2021

/s/ *Victor T. Metroff*
Mohammed O. Badwan, Esq.
Victor T. Metroff, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8180
mbadwan@sulaimanlaw.com
vmetroff@sulaimanlaw.com

## CERTIFICATE OF SERVICE

I, Victor T. Metroff, an attorney, certify that on June 16th, 2021, I caused the foregoing to be served upon counsel of record through operation of the Court's Case Management/Electronic Case File (CM/ECF) system.

/s/ Victor T. Metroff