UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA A. TWARDOWSKI | § § | |
| Plaintiff, | § § | Civil Action No. 1:20-cv-04285-MFW |
| v. | § § § | **CREDIT MANAGEMENT, LP's REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| CREDIT MANAGEMENT, LP | § § | |
| Defendant. | § | |

## **DEFENDANT CREDIT MANAGEMENT, LP'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant/Movant, Credit Management, LP ("CMLP") and for its Reply Memorandum in Support of its Motion for Summary Judgment, states as follows:

### ARGUMENT

Under the standards set down by the United States Supreme Court, a dispute as to a material fact must be "genuine," in that "a party opposing a properly supported motion for summary judgment . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citations omitted). Under LR 56.1(e)(3), that requirement means that, "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." LR 56.1(e)(3). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id*. Plaintiff fails to comply with the L.R. and fails to attach evidence that creates this genuine issue of fact in her Response.

**I.    Injury in Fact**

Plaintiff failed to meet the elements of injury because her testimony merely invoked vague

1

words like "anxiety" and "stress" without describing the circumstances of those emotions in reasonable detail. Plaintiff's entire evidentiary record consists of two brief deposition passages, followed by her own additional testimony that contradicts those passages. Such flimsy and contradictory "evidentiary" support is far from the "detailed" and "significant" emotional distress she argues she experienced. Response Brief at 4-5; PRMF 37, 38, 39, 44, and 48.

Plaintiff first cites an exchange in which she states that she was anxious about the Letter:

> It's anxious to not know if the debt was discharged and to know if there was any other debts not discharged, if the bankruptcy didn't, you know, fully go through. And I know we included that in the bankruptcy schedule. So – I mean, that is worrisome.

Exhibit 1 at 21:21-25. In the next passage she cites, Plaintiff stated that "it really took me by surprise. It made me anxious. The letter made me anxious because it was worrisome that it wasn't fully discharged or . . . ." Exhibit 1 at 22:4-7 (testimony cut off due to technical difficulties).

The next passages cited by Plaintiff, though, *directly contradict* that testimony that she was confused. First, Plaintiff cites testimony in which she unequivocally states she knew the debt had been discharged when she received the Letter:

> Q. Did you ever after receiving the July 1st, Exhibit 3, 2020 Credit Management letter, did you ever consider making payment on this debt?
> A. Not without speaking to the attorneys first, because it should have been discharged. So why would I make a payment on that?
> Q. Understood. So is the answer, no, you didn't consider making payment on this debt after the July 1, 2020 letter?
> A. Correct, because it was discharged in the bankruptcy.

Exhibit 1 at 33:13-24. She follows this with a citation to a passage in which she describes how she took no action other than giving the letter to her attorneys:

> Q. Did you take any action because of receiving the July 1, 2020 Credit Management letter marked as Exhibit 3?
> A. I gave it to my attorney.
> Q. Other than giving the letter to your attorney, did you take – and I don't want to know communications you had with your attorney. But other than giving

2

> the July 1, 2020 letter to your attorney, did you take any other action because of this letter?
> A. I personally did not. I gave it to my attorneys.

Exhibit 1 at 35:25-36:10. Indeed, as that exchange continued in Plaintiff's deposition, she revealed she did not give the letter to her attorneys because she was "confused" about the debt, but because "I trust them to do what they need to in terms of, like, violation of bankruptcies." Exhibit 1 at 36:18-20.

Those brief, contradictory passages of Plaintiffs deposition represent the entirety of Plaintiff's evidentiary record supporting her vague and fleeting allegations of "anxiety" and "stress." She asks this Court to find standing because she stated she was "anxious," that she experienced "stress," and that she was confused – but then was not confused – about the status of the debt. Such allegations cannot be sufficient to establish a genuine issue of fact. And even if the Court accepts Plaintiff's evidence that she was "anxious," "stressed," and "confused," such assertions, without more, are still inadequate to establish standing as a matter of law.

In a raft of similar cases over the past two years, the 7th Circuit has recently taken a strong position regarding injury-in-fact requirement in FDCPA cases. *See Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019); *Larkin v. Fin. Sys. Of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020); *Bazile v. Fin. Sys. Of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020); *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020); *Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020); *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 711 (7th Cir. 2021); *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041 (7th Cir. 2021); *Markakos v. Medicredit, Inc.*, 997 F.3d 778 (7th Cir. May 14, 2021).

3

As the court just explained in *Markakos*, "[t]he thrust of these cases is simple—the violation of an FDCPA provision, whether 'procedural' or 'substantive,' does not necessarily cause an injury in fact." 997 F.3d at 780. "Rather, to fulfil the injury in fact requirement, the violation must have harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Id*. (citing *Casillas*, 926 F.3d at 333 (internal quotations omitted)). "An FDCPA plaintiff must allege a concrete injury regardless of whether the alleged statutory violation is characterized as procedural or substantive." *Larkin v. Fin. Sys. Of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020). Further, the court has held that, after the pleading stage, "the plaintiff must support each controverted element of standing with competent proof, which we've understood as a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists[.]" *Bazile*, 983 F.3d at 278.

The court has variously held that, without more, injury-in-fact was not established by several similar allegations of vague emotional distress. *See Gunn*, 982 F.3d at 1072 ("annoyance" or "intimidation"); *Pennell*, 990 F.3d 1045 (7th Cir. 2021) ("[n]or does stress by itself with no physical manifestations and no qualified medical diagnosis amount to a concrete harm"); *Smith*, 986 F.3d at 710 ("a consumer's assertion that she was confused by a debt-collection letter does not show injury unless the confusion leads the consumer to take some detrimental step"); *Markakos*, 997 F.3d at 781 (denying standing where the consumer was "confused and aggravated"); *Brunett*, 982 F.3d at 1069 (all FDCPA litigants are "concerned, confused, disturbed, or upset enough to ask lawyers for help[, b]ut the Supreme Court held that only people who can show personal, concrete injuries may litigate").

Indeed, it is curious that Plaintiff chooses to cite a number of these recent cases, despite their representing the clear weight and trajectory of the 7th Circuit's approach to standing being

4

against her.  She claims CMLP misapplies *Brunett*, for example, in that "unlike the plaintiff in *Brunett*, Plaintiff was mislead to her detriment into believing that her bankruptcy discharge had no legal effect and she was still liable for the debt that was discharged in bankruptcy."  Response at 6.  Note this argument is directly contradicted by her own testimony about her lack of confusion cited above.  In any event, confusion – without some *action* taken *to her detriment* – is exactly the kind of amorphous allegation of harm the *Brunett* court found unavailing.  In the words of the court, "[a] debtor confused by a dunning letter may be injured *if she acts, to her detriment, on that confusion*—if, for example, the confusion leads her to pay something she does not owe, or to pay a debt with interest running at a low rate when the money could have been used to pay a debt with interest running at a higher rate.  **But the state of confusion is not itself an injury**."  *Brunett*, 982 F.3d at 1068 (emphases added).  Here, Plaintiff testified that she did not even consider paying the debt because she knew it was discharged.  Exhibit 1 at 33:13-24.

      She also claims CMLP misapplies *Pennell*, in that she, unlike the *Pennell* plaintiff, "lost time" by "reaching out to her bankruptcy counsel to verify that her bankruptcy was successful."  Response at 7.  In *Pennell*, the plaintiff made allegations similar to Plaintiff's, here – of "stress and confusion."  990 F.3d at 1045.  The Court found, based on its reasoning in *Brunett*, that confusion was not an injury unless acted upon to her detriment, and that "stress" with no physical manifestation or medical diagnosis was almost insufficient.  *Id*.  And, as *Brunett* clarified, the fact that she consulted her lawyer is also insufficient to establish an injury.  As the 7th Circuit pointed out, every FDCPA case in which it had ruled against the existence of standing involved plaintiffs who hired lawyers.  "[Those plaintiffs] had been concerned, confused, disturbed, or upset enough to ask lawyers for help."  *Brunett*, 982 F.3d at 1069.  "But the Supreme Court held that only people who can show personal, concrete injuries may litigate."  *Id*.

5

In the words of the 7th Circuit, "Talk is cheap, but where's the concrete harm? That's what the Constitution requires, and [Plaintiff] does not allege any." *Id*. at 1069. Plaintiff's injury allegations are based upon vague and contradictory testimony which this Court should decline to credit in the first place. But even if the Court accepts Plaintiff's allegations that she was anxious, stressed, and confused, under a swath of binding 7th Circuit precedent, such flimsy, vague allegations of emotional injury do not rise to the level of injury-in-fact. This Court should dismiss this case for lack of subject-matter jurisdiction.

## II. Bona Fide Error

Plaintiff's Reply unavailingly attempts to inject issues of fact into the discussion of CMLP's procedures. Yet each and every attempted factual dispute fails to meet the standards noted above for "genuine disputes" of material fact. First, several of Plaintiff's responses set forth new facts which are not fairly responsive to the asserted facts to which the response is made, which is forbidden under LR 56.1(e)(2). Indeed, this objectionable conduct is carried over into Plaintiff's Response brief itself, in which new facts are presented that are not properly asserted in an additional statement and are not properly supported by evidence. Further, under LR 56.1(e)(2), this Court should consider CMLP's Statement of Material Facts to be admitted by Plaintiff in its entirety. As laid out in more detail below, each of Plaintiff's Responses to CMLP's Statements of Fact either objectionably asserts new factual material not responsive to the assertion, or otherwise fails to create a genuine dispute as to the fact to which it responds. As a result of these infirmities, each and every Statement of Fact should be deemed admitted pursuant to LR 56.1(e)(3).

### a. *Objectionable Responses Under LR 56.1(e)(2)*

CMLP objects to two of Plaintiff's responses pursuant to LR 56.1(e)(2). Under the Rule, responses to Statements of Facts "may not set forth any new facts, meaning facts that are not fairly

responsive to the asserted fact to which the response is made." LR 56.1(e)(2). Instead, the proper way for an opposing party to assert additional facts is to include "a statement of additional material facts that complies with LR 56.1(d) and that attaches any cited evidentiary material not attached to the LR 56.1(a)(2) statement or LR 56.1(b)(2) response." LR 56.1(b)(3). Specifically, in PRMF 7, Plaintiff attempts to assert that Walgreens had actual knowledge of Plaintiff's bankruptcy, and in PRMF 10, Plaintiff asserts CMLP's bankruptcy scrub policy was deficient because it allegedly lacked independent, in-house verification protocols. Neither of these facts are properly asserted under the Local Rules, and the Court should not consider them.

     Plaintiff repeats this improper conduct in its actual brief. First, Plaintiff repeats – and relies heavily upon – the above allegations concerning Walgreens's knowledge and independent verification. *See* Response at 9 (Walgreens's knowledge); 13 (independent verification). Indeed, these improperly-asserted facts are central to Plaintiff's argument, in that they are two of only three specific allegations regarding the inadequacy of CMLP's procedures or CMLP's tendency to follow said procedures. These new allegations are joined by others. Plaintiff asserts that the "totality and specific information that was sent [to LCI for the bankruptcy scrub] is unknown" and "[a] complete account of the information sent to LCI in its native form is unavailable." Response at 9-10. These are factual assertions, all of which could have been included as discovery requests or questions at deposition, but were not. Plaintiff further makes multiple references to "policies and procedures" not being followed in this particular case, or policies lacking any specificity as to "what actions to take to prevent errors." Response at 11, 12. Neither of these assertions are properly asserted fact statements, and neither are supported by any evidence whatsoever. Pursuant to LR 56.1(e)(2), this Court should decline to consider any of Plaintiff's additional facts not properly raised.

7

b. *The Dispute or Evidence Cited Does Not Contradict CMLP's Statement or Evidence*

Several of Plaintiff's responses are not genuine disputes in that Plaintiff's response does not actually contradict CMLP's Statement of Fact, or the evidence cited in the dispute does not actually support that dispute. PRMF 6, 7, 12, and 22 are examples of the former. In PRMF 6, Plaintiff relies solely on her allegations of wrongdoing to support the assertion that CMLP's policies are not always followed. And in PRMF 7, the alleged dispute does not contradict the Statement of Fact – that CMLP has a policy not to accept an account the creditor knows is subject to bankruptcy, but again relies on innuendo to suggest CMLP did not follow that policy in this case. The same infirmity applies to PRMF 12, in which Plaintiff again does not attempt to actually dispute that a policy was in place, but merely implies it was not followed. And in PRMF 22, Plaintiff fails to account for CMLP's cited deposition testimony, which quite directly supports the asserted fact that CMLP does not engage in collection until it receives a response from the bankruptcy scrub.[1]

Plaintiff's responses contain far more examples – in PRMF 8, 9, 12, 14, 15, 22, and 48 – of the latter infirmity – that the evidence cited does not actually support the dispute. In PRMF 8, Plaintiff asserts "CMLP's deposition testimony demonstrates that no such affirmative duty exists [for creditors to inform CMLP of bankruptcies]." Yet the deposition passages cited by Plaintiff have nothing to do with this assertion – they merely describe the process by which creditors

---

[1] That testimony is as follows:

> Q· And prior to Credit Management sending out any collection letters on accounts that they are collecting upon, it is procedure to have what is described in Exhibit 2, completed, correct?
> A· Yes, that's correct.

Exhibit 2 at 23:5-9.

typically inform CMLP's Client Services Department of new information related to accounts being serviced by CMLP. Plaintiff's Exhibit 1 at 69:17-22.[2] In PRMF 9, the cited deposition testimony has nothing to do with the asserted fact. *Compare* DSMF 9 *with* Plaintiff's Exhibit 1 at 13:9-19. In PRMF 12, Plaintiff claims its cited testimony proves LCI did not continue to monitor the account, when that testimony actually states LCI never returned any new *information* about that account.[3] PRMF 15 similarly cites deposition testimony that supports a conclusion opposite to

---

[2] Indeed, the testimony directly preceding the passage cited by Plaintiff here *supports* CMLP's asserted fact that creditors are expected to provide CMLP notice of bankruptcies applicable to accounts:

> Q· So if a creditor was notified of a bankruptcy, is it part of your procedure to receive that information?
> A· Yes.
> Q· Okay. Does Credit Management have an expectation that creditors will provide it with notices of bankruptcy or notices of bankruptcy discharge?
> A· Yes.
> Q· Is that part of your procedure, receiving information from creditors –
> A· Yes.

Plaintiff's Exhibit 1 at 69:3-14.

[3] The deposition testimony was as follows:

> Q· Do you know if LCI provided continuous or rolling updates on Ms. Twardowski's account that we have previously discussed? And when I say previously discussed, LCI provides rolling and updated information to Credit Management on active files. Do you know if there was updated information provided by LCI?
> A· On this particular account?
> Q· Yes.
> A· Not to my knowledge, no.
> Q· Do you know why there wasn't any information provided?
> A· Again, because they didn't consider it a hit based on the information that we provided to them.

Plaintiff's Exhibit 1, Wilson Deposition, at 38:13-39:5.

9

that being asserted by Plaintiff.[4] In PRMF 22, Plaintiff cites several documentary policy exhibits, *none* of which suggest, as Plaintiff claims, "that collection activity begins immediately after an account is placed with Defendant." And in PRMF 48, the deposition testimony cited by Plaintiff directly supports CMLP's asserted fact that "the only action Plaintiff took was to give the letter to her attorneys."[5]

Finally, in three of her responses, Plaintiff chooses to simply ignore CMLP's cited evidence. Specifically, in PRMF 7, 21, and 27, CMLP cited to an affidavit of Nelson Wilson, CMLP's Director of Compliance, marked as Exhibit 12. In DSMF 7, CMLP cites to Paragraph 4 of the affidavit, in which Mr. Wilson clearly states it is CMLP's policy not to accept the placement of an account when the creditor is aware the account is subject to bankruptcy. In DSMF 21, CMLP cites Exhibit 12 at paragraph 13, which directly supports the assertion that the policies are "readily available to all CMLP employees who need them, are regularly updated as the need arises, and are the subject of regular training sessions of all CMLP employees who interact with consumer

---

[4] That testimony, which allegedly supports the assertion that LCI is *not* a reliable vendor, is as follows:

> Q· Is there – strike that. Is it safe or proper for me to say that receiving unreliable information from LCI, in your opinion, is not common, meaning it doesn't happen very often?
> A· I would say it's not common.

Plaintiff's Exhibit 1 at 41:6-10.

[5] The cited testimony is as follows:

> Q. Other than giving the letter to your attorney, did you take – and I don't want to know communications you had with your attorney. But other than giving the July 1, 2020 letter to your attorney, did you take any other action because of this letter?
> A. I personally did not. I gave it to my attorneys.

Exhibit 1 at 36:4-10.

accounts." And DSMF 27 cites Exhibit 12 at paragraph 14, which states "[f]rom my personal knowledge, I know that all applicable policies and procedure were followed regarding the account that is the subject of this lawsuit ('the Account')." Under Rule 56, factual positions may be supported by "affidavits or declaration" that are "made on personal knowledge, set[ting] out facts that would be admissible in evidence, and show[ing] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1)(A); (c)(4). Plaintiff has made no argument that the Court should not consider Exhibit 12 based upon personal knowledge, admissibility, competency, or any other legal objection. She cannot, and this Court should not, now simply ignore the affidavit.

  c. *No Evidentiary Support and Contradictory Admissions*

    Plaintiff's remaining Responses are either devoid of evidentiary support or claim a dispute on an issue she concedes elsewhere. PRMF 6 and 7 are examples of the former, in which Plaintiff claims Walgreens had actual knowledge of the bankruptcy based on nothing more than implication (that Walgreens had been listed in Plaintiff's bankruptcy schedule), yet offers no evidence whatsoever to prove that actual knowledge. In PRMF 8, as discussed above, the only evidence cited contradicts Plaintiff's dispute – she cites no evidence whatsoever to dispute CMLP's stated policy that it does not accept accounts known by their creditors to be subject to bankruptcy. In PRMF 9, Plaintiff seems, perhaps through a clerical error, to have failed to even make an argument as to the truth or falsehood of the stated fact (leaving a blank line after "Defendant's deposition revealed that . . ."). In PRMF 10, Plaintiff offers no evidence to support its dispute to the fact that CMLP's policy is to subject every new account to a bankruptcy scrub. And in PRMF 14 and 15, Plaintiff again cites only evidence that contradicts her own dispute, then relies on her own allegations of CMLP's wrongdoing without any more.

11

Finally, in two of her Responses, Plaintiff claims a dispute that is directly contradicted by her concessions to other Statements of Fact. In PRMF 7, for example, Plaintiff purports to dispute that CMLP had a policy against accepting accounts when the creditor was aware of a bankruptcy. Yet Plaintiff does not attempt to dispute DSMF 24-26, which prove CMLP was not informed of Plaintiff's bankruptcy by Walgreens, the bankruptcy court, nor any other person or entity. *See* PRMF 24-26. The same issue applies to PRMF 27, in which Plaintiff purports to dispute that CMLP followed its policies and procedures as it processed her Account. Yet Plaintiff concedes to DSMF 28-36, which lay out in detail nearly every step of those procedures and how CMLP went about following them. In light of its other admissions, then, Plaintiff's alleged disputes to these Statements of Fact should not be credited.

d. ***Without Factual Disputes, Plaintiff's Argument Fails***

Plaintiff's entire Response argument relies upon the factual disputes shown above to be deficient as a matter of law. Specifically, Plaintiff makes a few specific claims supporting alleged factual disputes around whether CMLP failed to follow its own policies, whether those policies are minimally sufficient for the bona fide error defense to apply, and whether CMLP's use of a third-party vendor to perform one prong of those procedures (the initial scrub) is sufficient as a matter of law.

Plaintiff first argues CMLP failed to follow its own policies in this case. First, she argues CMLP did not follow its policy of not accepting an account when the creditor knows the account is subject to bankruptcy because "there is no question that CMLP's client Walgreens had knowledge of Plaintiff's bankruptcy discharge." Response at 9. Yet, as discussed at length above, this factual assertion is objectionable, and is based solely on innuendo and inference, rather than actual evidentiary support, and contradicts her own admissions to DSMF 24-26 (noting CMLP

12

was not informed of the bankruptcy by anyone, including Walgreens). She goes on to claim a factual dispute as to what information CMLP actually sent to LCI to perform the bankruptcy scrub, which, again, as discussed at length above, is an objectionable – and conjectural – factual allegation at best. She then argues LCI did not follow the policy of continuing to monitor the account, citing testimony that simply does not support that assertion. Indeed, not one of Plaintiff's claimed disputes regarding whether CMLP followed its policies represents a genuine dispute. And Plaintiff herself conceded nearly all of the individual steps *were* followed. *See* PRMF 28-36. There simply is no genuine dispute as to whether CMLP followed its own policies.

Plaintiff's discussion of the adequacy of CMLP's procedures is similarly vague and unconvincing. Again relying on its inadequate factual assertions about Walgreens's knowledge of the bankruptcy, Plaintiff claims this alleged failure shows CMLP has no policy or procedure to ensure it does not accept accounts subject to bankruptcy. This assertion ignores CMLP's comprehensive policy of subjecting *every* new account to a bankruptcy scrub, a policy that is more comprehensive than scrubs that have been approved by the 7th Circuit and this Court. *See Cross v. Risk. Mgmt. Alternatives, Inc.*, 374 F. Supp. 2d 649, 652 (N.D. Ill. 2005) (only some new accounts subjected to bankruptcy scrub); *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 497 (7th Cir. 2007) (third party scrub and promise from creditor to notify of known bankruptcies sufficient to establish bona fide error). Plaintiff then repeats its unsupported allegation that continuous monitoring did not occur, which, again, is simply unsupported by Plaintiff's cited deposition testimony. In short, Plaintiff relies entirely on these alleged mistakes to prove CMLP's policies were inadequate – alleged mistakes whose existence is entirely without support from the evidentiary record.

Finally, Plaintiff claims CMLP relies "solely" on information from LCI to prevent collection on accounts subject to bankruptcy, then cites a number of out-of-Circuit cases allegedly holding such reliance inadequate. Plaintiff's argument fails both as a factual and legal matter. First, CMLP does not rely "solely" on information from LCI to prevent collecting such accounts. While every account is subjected to a scrub performed by LCI – a vendor CMLP trusts based upon substantial experience – that scrub is accompanied by multiple layers of policies and procedures to obtain and act upon potential bankruptcy information from creditors, consumers, attorneys, and any other source. And Plaintiff's non-binding case law notwithstanding, the 7th Circuit has, on multiple occasions, approved procedures that fell short of CMLP's comprehensive procedures to identify and prevent collection on bankrupt accounts. *See Cross v. Risk. Mgmt. Alternatives, Inc.*, 374 F. Supp. 2d 649, 652 (N.D. Ill. 2005); *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 497 (7th Cir. 2007).

Plaintiff has failed to genuinely dispute *any* of the facts CMLP relies upon in its initial brief to support summary judgment. In light of those undisputed facts, it is undisputed CMLP has in place a plethora of substantial, reasonably adapted, multi-tiered procedures to prevent it from collecting accounts subject to bankruptcy. It is also undisputed that CMLP followed those procedures in this case. While no system is – nor can it be – perfect, the law does not expect perfection. It expects debt collectors to approach their legal obligations with sincere, reasonable procedures and policies. There is no question CMLP fulfilled that responsibility in this case. As a matter of law, this Court should find CMLP is protected by the bona fide error defense and enter summary judgment in CMLP's favor.

## CONCLUSION

WHEREFORE, Defendant Credit Management, LP, respectfully requests this Court enter judgment granting Defendant's Motion for Summary Judgment, award its fees and costs incurred herein, and dismiss all Plaintiff's claims with prejudice.

Dated: June 30, 2021 	Respectfully Submitted,

**MALONE FROST MARTIN PLLC**
*Attorneys for Defendant*

By:/s/ PATRICK A. WATTS
Patrick A. Watts, IL Bar# 6302112
150 S. Wacker Dr., Ste. 2400
Chicago, IL 60606
pwatts@mamlaw.com
P: (312) 725-8267
F: (888) 632-6937

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 30, 2021, the foregoing was filed electronically with the Clerk of the Court and served by operation of the Court's electronic filing system to the following counsel of record:

Mohammed O. Badwan
Joseph S. Davidson
Victor T. Metroff
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
mbadwan@sulaimanlaw.com
jdavidson@sulaimanlaw.com
vmetroff@sulaimanlaw.com

/s/ PATRICK A. WATTS