**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JESSICA A. TWARDOWSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20 C 4285** |
| | ) | |
| **CREDIT MANAGEMENT, L.P.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Jessica Twardowski filed suit against Credit Management, L.P. under the Fair Debt Collection Practices Act for attempting to collect a $165 debt from her despite the fact that the debt had been discharged in bankruptcy proceedings. Credit Management has moved for summary judgment for lack of standing and on the merits. For the reasons stated below, the Court concludes that Twardowski lacks standing under the Seventh Circuit's recent jurisprudence in this area.

### Facts

The following facts are undisputed unless otherwise noted. Twardowski incurred a debt of $165 for medications purchased via AllianceRx Walgreens Prime. In 2020, Twardowski filed for bankruptcy, listing AllianceRx Walgreens Prime as a creditor. The debt was discharged on June 18, 2020. On June 29, 2020, Credit Management acquired Twardowski's account from AllianceRx Walgreens Prime but was not notified by AllianceRx that the account was subject to bankruptcy proceedings.

Credit Management contracts with a third-party vendor, LCI, to perform a bankruptcy "scrub." It sends every new account to LCI to determine if the account is subject to bankruptcy, and if LCI detects a bankruptcy proceeding, it notifies Credit Management. If LCI does not initially detect that an account is subject to bankruptcy, it continues to monitor the account and informs Credit Management if it learns of a bankruptcy. When Credit Management learns an account is subject to bankruptcy, whether through LCI, a creditor, or a consumer, it marks the account accordingly and immediately ceases attempts to collect.

Credit Management sent Twardowski's account to LCI when it acquired the account from AllianceRx. LCI did not notify Credit Management that Twardowski's account is subject to bankruptcy, although there is evidence that Credit Management does not wait to get word from LCI before starting collection efforts. Credit Management sent Twardowski a collection letter on July 1, 2020.

Twardowski testified that when she got the collection letter, "it really took me by surprise. It made me anxious. The letter made me anxious because it was worrisome that it wasn't fully discharged." She further testified that the letter "caused me anxiety because I was already thinking that this was gone, and then I got more – I got more letters." Defs.' Ex. A at 22, 23. When asked if she sought professional guidance due to the letter, Twardowski stated that "I started seeing a therapist and I do continue to see a psychiatrist for my anxiety and just – I don't want to say irritability, but my anxiety. And a lot of it does stem from the bankruptcy and – this has been going on for a while now. So not knowing the outcome of it, it makes me anxious." *Id.* at 34-35. When asked whether she discussed the collection letter with her psychiatrist, however, Twardowski

said no. *Id.* at 35. In her response to Credit Management's statement of facts, Twardowski agreed that she had begun seeing a mental health professional *before* receiving the letter and conceded "that she did not receive treatment because of the letter itself" and did not discuss the letter with her mental health professional. *See* Pl.'s Resp. to Def.'s Stat. of Material Facts ¶¶ 42, 44, 45.

After reviewing the collection letter, Twardowski consulted with her attorneys, who then filed the present lawsuit. Credit Management immediately ceased collection activities when it learned of the lawsuit.

In her complaint, Twardowski alleges that Credit Management violated the FDCPA by making a "false representation of the character, amount, or legal status of [a] debt" or by "[t]he use of [a] false representation or deceptive means to collect or attempt to collect [a] debt." 15 U.S.C. § 1692e(2), (10). As indicated, Credit Management has moved for summary judgment. Credit Management contends that Twardowski lacks standing to sue under Article III of the Constitution and that its attempt to collect the debt despite the bankruptcy discharge amounted to a bona fide error within the meaning of 15 U.S.C. § 1692k(c) such that it cannot be held liable.

**Discussion**

Before the Court can reach the merits, it must address the threshold question of standing. *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). Standing under Article III of the Constitution consists of three elements: "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

3

The issue in this case involves the injury-in-fact element. A plaintiff must assert a concrete injury to satisfy this requirement, but that does not require the injury to be tangible. *Id.* at 1548-49. When enacting statutes, "Congress may identify and elevate historically non-cognizable intangible harms to the status of cognizable injuries, and when it does so, 'its judgment is . . . instructive and important.'" *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (quoting *Spokeo*, 136 S. Ct. at 1549). As relevant here, in enacting the FDCPA, Congress imposed civil liability on debt collectors, prohibiting, among other things, false and misleading statements in the course of debt collection efforts. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010).

But although "Congress has the power to define intangible harms as legal injuries for which a plaintiff can seek relief," it "must operate within the confines of Article III, which "'requires a concrete injury even in the context of a statutory violation.'" *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 333 (7th Cir. 2019) (quoting *Spokeo*, 136 S. Ct. at 1549. But "the asserted violation of a substantive right conferred by the Fair Debt Collection Practices Act does not guarantee the plaintiff's standing. There must still be a concrete injury." *Brunet v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020).

In *Brunet*, the Seventh Circuit held that a debtor's confusion and resulting consultation with a lawyer after getting a collection letter are not sufficient to establish an injury in fact. *Id.* And more recently, the Seventh Circuit ruled that "stress by itself with no physical manifestations and no qualified medical diagnosis [does not] amount to

a concrete harm" for purposes of standing under Article III.  *Pennell v. Glob. Tr. Mgmt.,* *LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021).

A reasonable observer might view these decisions and others like them as effectively rendering the FDCPA, enacted over forty years ago, a dead letter—at least in federal court.  The statute has been consistently enforced through private litigation, as regulatory authorities are insufficiently staffed and financed to police the very large industry that exists around debt collection.  The harm most likely to be caused by improper debt collection methods that contravene the statute is emotional harm—stress and anxiety.  And most of those who are the targets of debt collectors by definition already owe money and thus are highly unlikely to have the financial wherewithal to consult a mental health professional who might be able—for a fee, presumably—to provide medical confirmation of a diagnosis.  Thus if, as the Seventh Circuit now appears to require, a debtor must show an economic harm (e.g., payment or partial payment of the debt being collected) or a confirmed medical diagnosis of a claimed intangible harm, noncompliance with the FDCPA is likely to go unpoliced.

The decisions the Court has cited, however, are binding on this Court, and they require dismissal of Twardowski's claim.  One might make the case that even if confusion and consulting a lawyer is not enough (as in *Brunet*), and anxiety without a medical diagnosis is not enough (as in *Pennell*), together they might suffice.  But the language of the decisions do not seem broad enough to enable an argument that a concrete harm can arise from the combination of two forms of supposedly non-concrete harm.  If the evidence reflected that Twardowski had consulted her psychiatrist *about* the letter such that receipt of the letter caused her to incur professional fees, then the

Court would be inclined to conclude that she had shown a sufficiently concrete harm. But Twardowski has specifically disavowed this: her treatment was ongoing when she got the letter, and she admits she never discussed it with the psychiatrist.

The Court concludes that Twardowski has failed to show that she suffered a "concrete" injury as required to establish standing to sue in federal court under Article III of the Constitution. The Court therefore grants Credit Management's motion for summary judgment to that extent, and for this reason it need not address the merits of Credit Management's bona fide error defense.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment in part [24] The Court directs the Clerk to enter judgment dismissing this case for lack of standing. Defendant's motion for summary judgment is otherwise moot.

Date: August 23, 2021

_____
        MATTHEW F. KENNELLY
        United States District Judge